**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds, <br><br> Plaintiffs, <br><br> v. <br><br> JB CONSTRUCTION CONTRACTORS, INC., d/b/a J.B. CONSTRUCTION, an Illinois corporation, <br><br> Defendant. | Case No. 20 cv 5834 |

## COMPLAINT

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Health & Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy Carollo, G. Ryan Liska, Katherine C.V. Mosenson and Sara S. Schumann, and for their Complaint against JB Construction Contractors, Inc. d/b/a J.B. Construction, state:

## COUNT I

**(Failure to Pay Benefit Contributions)**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

1

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant JB Construction Contractors, Inc. d/b/a J.B. Construction, (hereinafter "Company"), does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to a collective bargaining agreement, which became effective June 3, 2020 ("Agreement"). (A true and accurate copy of the Independent Construction Industry Collective Bargaining Agreement signed by the Company which adopts and incorporates the various area-wide collective bargaining agreements and the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Midwest Construction Industry Advancement Fund (the "MCIAF"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LCDMC"), the CARCO Industry Advancement Fund ("CARCO"), the Underground Contractors Association ("UCA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement, and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement, and the Funds' respective Agreements and Declarations of Trust, contributions

which are not submitted in a timely fashion are assessed 20 percent liquidated damages plus interest.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11. The Company entered into a Contract for Cash Bond with the Funds, requiring the Company to pay $500.00 per month, starting July 15, 2020 and ending April 15, 2020. A copy of the Contract for Cash Bond is attached as Exhibit B.

12. The Company paid the July 2020 payment but failed to pay its August 2020 forward Contract for Cash Bond payments.

13. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a) failed to submit reports and/or pay contributions to Plaintiff Pension Fund for June 2020 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and/or pay contributions to Plaintiff Welfare Fund for June 2020 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to submit reports and/or pay contributions to Retiree Welfare Fund for June 2020 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to submit reports and/or pay contributions to Laborers' Training Fund for June 2020 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e) failed to submit reports and/or pay contributions owed to one or more of the other affiliated funds identified in Paragraph 7 above for June 2020 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

14. The Company's actions in failing to submit timely reports and contributions and pay its monthly bond payments violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA, 29 U.S.C. §185, and the Contract for Cash Bond.

15. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of the Agreement and the Funds' respective Trust Agreements, and the terms of the Contract for Cash Bond, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, the remaining cash bond payments, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant JB Construction Contractors, Inc. d/b/a J.B. Construction as follows:

    a.    ordering the Company to submit benefit reports and pay all contributions for June 2020 forward and to submit to an audit upon demand;

    b.    ordering the Company to submit the remaining cash bond payments

    c.    entering judgment in sum certain against Defendant Company on the amounts due and owing as pled in the Complaint, and pursuant to the amounts revealed as owing pursuant to the June 2020 forward reports, and audit, if any, including contributions, interest, liquidated damages, bond payments, audit costs, and attorneys' fees and costs; and

    d.    awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT II

### (Failure to Pay Union Dues)

16.    Plaintiffs reallege paragraphs 1 through 15 of Count I as though fully set forth herein.

17.    Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

18.    Dues reports and dues contributions are due by the 10th day following the month in which the work was performed. Dues reports and dues contributions which are not submitted in a timely fashion are assessed liquidated damages.

19. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust the Company failed to submit Union dues reports and dues that were or should have been withheld from the wages of its employees performing covered work for the period of June 2020 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

20. Pursuant to the Agreement and Federal Common Law, the Company is liable to the Funds for the unpaid Union dues, as well as liquidated damages, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant JB Construction Contractors, Inc. d/b/a J.B. Construction. as follows:

    a. ordering the Company to submit dues reports and pay all dues for the time period of June 2020 forward;

    b. ordering the Company to submit its books and records to an audit upon demand to determine dues contributions compliance;

    c. entering judgment in sum certain against the Company on the amounts due and owing pursuant to the June 2020 forward dues reports, and on any amounts found due and owing pursuant to the audit, including dues, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs; and

    d. awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

September 30, 2020                          Laborers' Pension Fund, et al.

                                                            By: /s/ Amy Carollo
                                                                   Amy Carollo

Amy Carollo
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between __J. B. Construction__ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: __6-3__, 20 __20__

ACCEPTED:
Laborers' Local Union No. __76__

By: _Anthony Waemstidt_ (signature)

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _James P. Connolly, Business Manager_

By: _Charles LoVerde, Secretary-Treasurer_

For Office Use Only: _____

RECEIVED JUL 07 2020

__J. B. Construction__

FEIN No.: [redacted]

By: _Bernabe Becerra_  President
(Print Name and Title)

_(signature)_

3115 Sharadesh Drive
(Address)

Carpentersville, IL 60110
(City, State and Zip Code)

224-829-4989
(Telephone/Telefax)

jbconstruction2500@gmail.com
(Email Address)

Effective June 1, 2017   WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

**Exhibit A**

## CONTRACT FOR CASH BOND

This agreement is entered into by the Laborers' Pension Fund, the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and The Fox Valley Laborers' Health and Welfare Fund and The Fox Valley and Vicinity Pension Fund (the "Funds") and the following Contributing Employer to the Funds:

JB Construction
213 TEE RD
_____
Address
Carpentersville, IL 60110
_____
City, State, Zip Code

WHEREAS Article VII, Section 2 and Article VI, Section 2 of the Agreements and Declarations of Trust establishing the aforementioned (the "Funds) Pension Fund and Health and Welfare Fund to authorize the Funds to accept cash bonds as guarantees for the payment of monthly contributions to the Funds; and

WHEREAS contributing Employers under the terms of the applicable collective bargaining agreement are required to post surety bonds or cash bonds in a form acceptable to the Construction and General Laborers' District Council of Chicago and Vicinity, (the "Union"); and

WHEREAS the Union has agreed to the establishment by the Funds of a bank account, money market account or other account for the holding of cash bonds pursuant to contract approved by the Boards of Trustees of the Funds; and

1

**Exhibit B**

WHEREAS the Boards of Trustees of the Funds have approved the establishment by the Funds of a bank account, money market account or other account for the holding of cash bonds by contributing Employers.

Now, therefore, the parties hereby agree that:

A. <u>Procedures for Filing a Cash Bond and Use of the Bond</u>

The Employer named above shall pay the amount listed below to the Funds as a cash bond to guarantee payment of employee wages, pension and welfare contributions owed by the Employer to employees of the Employer and/or to the Funds for work performed by the employees under the terms of a collective bargaining agreement between the Employer and the Funds; and

The cash bond shall be used to satisfy on a pro rata basis amounts due for unpaid wages and/or unpaid contributions to the Funds, including liquidated damages and interest owed to the Funds; and

The Administrator of the Funds is authorized to deposit the cash payment listed in an interest-bearing bank account, money market account or other account for deposit of such funds to be selected at the discretion of the Administrator, to retain the interest earned on a said cash deposit to defray the expenses of the funds for the administration of cash bonds and for the collection of delinquencies; and

To deduct from said account and pay to employees and/or to the Funds any amounts determined by the Administrator, based upon reasonably reliable information provided by representatives of the Union, the Field Representatives of the Funds or compliance auditors of the Funds or Union, the full amount of any unpaid wages or unpaid contributions, liquidated damages or interest.

The Administrator shall provide written notice at least ten (10) days in advance to the Employer of a determination by the Administrator to deduct sums from the cash bond to satisfy the claims for wages and/or unpaid contributions, liquidated damages or interest.

The Employer, within ten (10) days of the date of the notice sent by the Administrator, may make other arrangements to pay the wages and/or contributions determined to be owed by the Administrator and shall provide written evidence to the Administrator of such arrangements.

An objection by the Employer that the claimed wages and/or contributions are not due and owing shall not prevent the Administrator from directing the payment of claimed wages and/or contributions. If a determination is made at a later date that the wages paid to employees or the contributions, liquidated damages or interest paid the Funds was not due and owing, the sole liability of the Funds shall be to restore the cash bond of any Employer to the extent of the contributions, liquidated damages and interest paid as contributions on behalf of the Employer that should not have been paid. Any claim of the Employer for wages improperly paid to employees shall be made against the employees who received the payments and not against the Funds or Administrator as long as the Administrator based the payments on information received from a source that the Administrator considered to be reasonably reliable. An auditor's report or employee's affidavits shall be conclusive proof of such a reasonable reliable source.

B. Procedures for Requesting a Refund of a Cash Bond

The Employer may request and obtain a refund of any balance of the cash bond being held by the Funds if the Employer ceases to do business for which contributions would be owed to the Funds under the terms of a collective bargaining agreement with the Union or during any period in which the Employer would be required to maintain existing terms and conditions of employment while negotiating over the terms to be included in a new collective bargaining agreement. Any such refund of the balance of the cash bond shall be paid without interest.

An Employer may obtain a refund of the cash bond if the Employer provides a surety bond written by an insurance carrier with reserves in excess of $1,000,000 authorized, licensed or permitted to do business in the state of Illinois, provided that the amount of said surety

3

bond is in compliance with the terms of the Employer's collective bargaining agreement with the Union or any amount previously prescribed by the Trustees for a delinquent employer equal to three times the monthly contributions of such Employer, as estimated by the Trustees, in accordance with the terms of the agreements and declarations of trust of the Funds.

No cash refund shall be paid to the Employer until the Employer has provided the necessary surety bond or evidence satisfactory to the Administrator that the employer has ceased doing business that would require contributions to the Funds. If the Employer fails to provide a refund request along with the necessary supporting information within three (3) years of the date on which the Employer last contributed to the Funds, the Employer shall forfeit its right to a refund and the Administrator shall transfer any balance credited to the Employer to the general accounts of the Funds to defray the costs of employer delinquencies.

C. Amount of Cash Bond

This Agreement for the payment and deposit of a cash bond in the amount of **$5,000.00** in monthly installments of $500.00 per month commencing on July 15, 2020 and ending on April 15, 2021 is entered into this 10th day of July, 2020 by the undersigned representatives of the Employer and Funds:

FOR THE EMPLOYER:      FOR THE FUNDS:

[signature]      [signature]
                                              Administrator

Position: President      Date: 8/6/20

Date: 7-17-20

4